THE CITY OF ATCHISON v. ROBERT R. ROSE.

1. CITY—*Action for Damages—Competent Evidence.* In an action against a city for damages, for falling into an opening in the sidewalk, it is competent to show by parol evidence the length of time the street upon which this sidewalk in question was situated, had been open.

2. QUESTION—*Answer, Not Responsive.* When a proper question is propounded to a witness, but the answer thereto is objectionable, the remedy is by a motion to strike it out. (*Hynes v. Jungren,* 8 Kas. 391; *Stone v. Bird,* 16 id. 488; *City of Wyandotte v. Gibson,* 25 id. 236.)

3. —————— *Cross-Examination—Limits.* The cross-examination of a witness should generally be confined to matters brought out in the examination in chief.

4. —————— *Claim, Disallowed.* *Held,* That the record shows that the claim of plaintiff had been presented to the city council and disallowed, before this action was commenced.

5. PHYSICIAN—*Worth of Services, May be Shown.* It is competent for the plaintiff, in a suit for damages, to show by physicians living in the vicinity of his residence, what the services of an attending physician were worth, during his sickness which was the result of the injury, as a part of the element of his damages.

6. VERDICT, *Sustained.* The instructions of the court and the special instructions asked by the defendant below considered, and *held,* that no error was committed by the trial court, and that the verdict was sustained by sufficient evidence.

*Error from Atchison District Court.*

THE case is stated in the opinion.

*H. C. Solomon,* for plaintiff in error.

*J. W. Coburn,* and *Waggener, Martin & Orr,* for defendant in error.

Opinion by GREEN, C.: This action was instituted by Robert R. Rose against the city of Atchison, on the 17th day of May, 1884, to recover damages against the city in the sum of $10,000, for injuries received while traveling along the sidewalk on the south side of Commercial street, in said city, between Fourth and Fifth streets. It is claimed, on the part of the defendant in error, that on the 13th day of February,

1884, while exercising reasonable and ordinary care and diligence, and without notice that said sidewalk was in a dangerous condition, he fell into a hole and opening in the sidewalk by reason of the boards being broken; that he was violently thrown down, injured and bruised in the back, spine, and legs, and for some weeks suffered pain, and that he was permanently injured. It was further claimed upon the part of the defendant in error, that the city of Atchison had neglected to keep the sidewalk where he was injured in proper repair; that for more than a year prior to the injury the city had permitted said walk to become broken, and to remain so; that the sidewalk, which was composed of boards, had become worn and rotten, and through the carelessness of the city had been permitted to remain so for a long period of time; and further, that the city had actual notice of the dangerous condition of the walk.

The answer of the defendant was a general denial; and further, if the plaintiff was injured, as claimed, it was by his own negligence and not through any negligence of the city. A trial was had at the November term, 1885, of the district court of Atchison county, before the court and jury, and a verdict rendered in favor of the plaintiff below for the sum $5,000. A motion for a new trial was filed, which was heard at the June term, 1886, and was sustained by the court, unless the plaintiff would consent to remit $2,500 of the amount of the verdict, and accept judgment for the sum of $2,500; which the plaintiff below accepted, and the motion for a new trial was overruled; the defendant below excepted, and brings the case here for review.

Questions of fact were submitted, at the request of the plaintiff below, as follows:

"1. On the evening of February 13, 1884, was the plaintiff injured by stepping into a hole or opening in the sidewalk on the south side of Commercial street, between Fourth and Fifth streets, in the city of Atchison? A. Yes.

"2. On February 13, 1884, was Commercial street in said city a public street, regularly laid out and dedicated and used as such? A. Yes.

"3. Had it been so laid out and used as a public street in said city since about 1858? A. Yes.

"4. If question 1 is answered 'yes,' state for what length of time prior to February 13, 1884, had such hole or opening remained in said sidewalk. A. From twelve to eighteen months.

"5. Did said defendant negligently permit said hole or opening to remain in said sidewalk for a long time prior and up to the time of the injury to the plaintiff? A. Yes.

"6. Ought the defendant, in the exercise of ordinary and reasonable care, to have discovered the hole or opening in said sidewalk prior to the injury of the plaintiff, and caused the same to be repaired? A. Yes.

"7. On February 13, 1884, when said plaintiff was injured, was said sidewalk at the place where said plaintiff was injured in a safe and proper condition? A. No.

"8. Was plaintiff injured by reason of the defendant negligently permitting said sidewalk to be and remain out of repair? A. Yes.

"9. Were the injuries which the plaintiff sustained on February 13, 1884, the result solely of the carelessness and negligence of the defendant? A. Yes.

"10. At the time the plaintiff was injured, how much was he earning per day? A. According to the testimony, about five dollars.

"11. As a result of such injuries, how long was the plaintiff confined to his bed and room? A. Seven or eight weeks.

"12. Was he thereafter compelled to use crutches? A. Yes.

"13. If question twelve is answered 'yes,' then state for what length of time plaintiff was compelled to use crutches as a result of such injuries. A. About eight months.

"14. During all of said time did he suffer much pain as a result of such injury? A. Yes.

"15. Is the plaintiff permanently injured? A. We think so.

"16. Will he ever probably recover from such injuries by him received on February 13, 1884? A. We think not."

Questions of fact were submitted, at the request of the defendant city, as follows:

"1. Was Commercial street at the time of the alleged injury a public thoroughfare and street of Atchison? A. Yes.

"2. What was the width of said Commercial street? A. Eighty feet.

"3. How much of said street had the city of Atchison designated to be used on each side for sidewalks? A. Twelve feet.

"4. What was the width of the sidewalk on the south side of Commercial street at the place where the alleged injury occurred? A. Eleven and one-half feet to curb.

"5. Was there an opening between the sidewalk on the south side on Commercial street, between Fourth and Fifth streets, at the place where the alleged injury occurred, at the time of the said alleged injury? A. Yes.

"6. How wide was said opening? A. Do not know.

"7. Who constructed the area, if there was one, at the place above mentioned? A. Do not know.

"8. Did the city of Atchison or its officers have actual notice or express knowledge, previous to the alleged accident, that the sidewalk was in a dangerous and unsafe condition at the place where the alleged injury referred to occurred? A. Yes, by its city clerk and street commissioner.

"9. On what part of the sidewalk was the alleged defect? A. North side.

"10. If the plaintiff had walked in the center of the sidewalk, or that part nearest the store building, would he have received the injuries complained of? A. Probably not.

"11. How wide was the hole in the sidewalk where plaintiff was injured? A. Eight inches.

"12. How long was it? A. From twelve to eighteen inches.

"13. How deep was it? A. From three to seven feet.

"14. How far was the nearest part of said hole from the front? A. About nine feet.

"15. How far was it from the curbing of the street? A. Extended from the curbing eighteen to twenty-four inches.

"16. What was the distance from the south end of this hole to the front of the building abutting on the sidewalk? A. About nine feet?

"17. How thick was the lamp-post at the top of the sidewalk? A. Six inches.

"18. Who was the owner of the premises in front of which the alleged accident is said to have occurred? A. L. F. Bird and others.

"19. Could the plaintiff have avoided the accident by the exercise of ordinary care? A. No, sir.

"20. Could the plaintiff have avoided the accident had he not been carrying a cradle upon his shoulders? A. No.

"21. Did the plaintiff have his attention called to the hole in the sidewalk before he stepped into it? A. No; but his attention was called to it just as he was falling.

" 22. Was the plaintiff looking where he was walking, or in front of him, at the time of the accident? A. Attention was directed ahead of him.

"23. Could the plaintiff, by looking in front of him when walking down the street, have avoided the accident? A. Had he been examining for holes, he might have.

"24. Was the hole through which plaintiff stepped covered by having a board nailed over it several days before the accident? A. No.

"25. If you find that the city had notice of the hole in the sidewalk, state how long it had said notice before the injury, and how was said notice given. A. Had notice for twelve to eighteen months of said opening, and notice given to city clerk and street commissioner.

"26. Was the plaintiff's leg or thigh dislocated or fractured by the accident? A. We do not know.

"27. Was the plaintiff a confirmed cripple before the accident, and was his disability permanent? A. There was a deficiency in the lower limb, from the knee down, which caused a slight limp.

"28. If your answer to No. 27 is 'yes,' state how long he has been such cripple. A. Since he was four years old.

"29. Before the accident occurred, how much shorter was plaintiff's left leg than his right, and how much smaller was his left leg below the knee than his right leg below the knee? A. His limb below the knee was half to an inch shorter; the leg below the knee was perceptibly shorter.

"30. At this time is the plaintiff suffering any pain from his thigh by reason of the accident? A. At times he is.

"31. If the answer to No. 30 is 'yes,' state whether said suffering is continuous. A. No.

"32. If you find a verdict for the plaintiff, will you state how much you allow for pain and suffering, and how much for medical attendance, and how much for loss of time A. For pain and suffering, $3,700; for medical attendance, $100; for loss of time, $1,200."

A number of errors are assigned by counsel for the plaintiff in error, and we will consider them in their order.

I. The first claim is, that it was error to show by the plaintiff below the length of time Commercial street had been used

as a thoroughfare prior to the 13th day of August, 1884. We fail to see the force and effect of this objection. If the witness knew the fact, it was certainly competent to show it by oral evidence, and the evidence was competent.

II. The second error complained of is in admitting evidence against the objection of the defendant below, as to the value of the plaintiff's services in his business. The question objected to, was: "What were your services, in the business you were engaged in, worth per day?" The objection was that it was incompetent, irrelevant, and immaterial. We think it was perfectly competent to ask the witness the question. He had a perfect right to show what his services were worth at the time he was injured. The answer the witness gave might have been objectionable, but no motion was made to strike it out. The rule is well settled that if the answer was not responsive, the remedy was by motion to strike out. (*Hynes v. Jungren*, 8 Kas. 391; *Brumbaugh v. Schmidt*, 9 id. 117; *Stone v. Bird*, 16 id. 488; *City of Wyandotte v. Gibson*, 25 id. 236.)

III. The next assignment of error is, that the court sustained an objection to a question propounded by counsel for the city, to witness Frank McCain, on the ground that the same was not proper cross-examination. The question was as follows: "Was it not lighter than almost any other part of Commercial street?" There was nothing in the direct examination with reference to the light: in fact, the evidence showed that the witness was not present when the accident occurred, and could not well give a comparison of the degrees of light at different points on the sidewalk. We think it was not germane to the examination in chief, and there was no error in sustaining the objection. (*Sumner v. Blair*, 9 Kas. 521; *Pratt v. Brockett*, 20 id. 201; *Maier v. Randolph*, 33 id. 340.)

IV. The next assignment of error is, in permitting the plaintiff below to introduce a section of an ordinance of the city of Atchison. A reference to the record shows that the objection of the defendant below was sustained, and we do

not see why counsel should complain. A word in passing will dispose of the further objection made, as to the bill presented to the city council. This was wholly immaterial, as the record shows that the claim for damages was presented to the city council, and disallowed.

V. A final objection is made to the introduction of the evidence of Dr. H. P. Grover. The question asked, was: "What, in your opinion, was it reasonably worth, the service of the attending physician upon Mr. Rose, yourself and Dr. Gough, during the sickness as a result of this injury?" The objection was, that it was incompetent, irrelevant, and immaterial. The witness answered: "I don't think the charge of one hundred dollars out of the way." The evidence showed that Dr. Grover was a physician, living where the defendant in error resided; that he was familiar with the prices and fees of a physician; and we think the question and answer were proper and competent.

VI. We pass to the next assignment of error made by the city, in refusing certain instructions asked. The record discloses the fact that twenty special instructions were asked upon the part of the plaintiff below, and twenty-seven upon the part of the city. The court refused all of the instructions asked upon the part of the plaintiff and defendant, and instructed the jury upon all matters arising upon the pleadings and evidence, and we think correctly.

This court has commended the rule adopted by the trial judge in this case, in the case of *Deitz v. Regnier*, 27 Kas. 109. Chief Justice HORTON, speaking for the court, says:

"But if the law is fully declared to the jury by the court in a general charge, and such charge embraces all points arising in the case, the court is not bound to repeat its charge in the form of special instructions, or give the special instructions in the language asked for."

VII. The last contention of the counsel for the city, which we shall notice is, that the evidence was insufficient to establish the permanent injury of the plaintiff below. There was considerable medical testimony to show the nature of the in-

jury — some to the effect that the injury received by the defendant's falling through the sidewalk was permanent; others testified that the defendant would improve, with proper treatment.

There was evidence to support all the findings of the jury, and the general verdict is sustained by sufficient evidence; and we fail to find in the record any good reason why it should be disturbed.

We therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.